IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA K. KELLEY, | ) | CASE NO. 5:06 cv 2055 |
| | ) | |
| Plaintiff, | ) | JUDGE ADAMS |
| | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | **REPORT AND RECOMMENDATION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Melissa K. Kelley's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends the decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On September 4, 2003, Plaintiff filed an application for Disability Insurance benefits and Supplemental Security Income benefits, alleging a disability onset date of May 7, 2002 due to limitations related to dysthymic disorder and a learning disability. Plaintiff filed a prior

application on June 7, 2002, that was denied initially on November 22, 2002, and upon reconsideration on June 3, 2003, and not appealed thereafter. On March 7, 2006, Administrative Law Judge ("ALJ") Thomas Ciccolini found no good cause to reopen this claim, making the determination on the prior application final and binding on the issue of disability through June 3, 2003 (Tr. 15). Thus, the earliest onset date under consideration in the ALJ's decision is June 4, 2003 (Id.). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform her past relevant work as an assembly worker and, therefore, was not disabled (Tr. 20). On appeal, Plaintiff claims the ALJ's determination was not supported by substantial evidence and that he improperly declined to reopen Plaintiff's prior claim.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Born on April 1, 1970 (age 35 at the time of the ALJ's determination), Plaintiff is a "younger individual." *See* 20 C.F.R. §§404.1563, 416. 963. Plaintiff last completed the twelfth grade and has past relevant work as an assembler, cashier, and food preparation worker (Tr. 74, 149).

### B. Medical Evidence

In November 1992, Plaintiff was hospitalized for one week following a suicide attempt by overdose of a prescription drug, after her children were placed in foster care (Tr. 157-58). She was diagnosed with major depression, single episode, and theophylline overdose (Tr. 157). She was started on Zoloft and Navane and underwent psychotherapy during her hospitalization (Id.).

Dennis Bliss, M.A., L.P.C.C., performed an intake evaluation at Nova Behavioral health, Inc. ("Nova") on June 26, 2002 (Tr. 184-87).  Plaintiff said she was depressed and anxious all the time and had no energy (Tr. 184).  She reported social anxiety, poor impulse control, paranoid ideation, difficulty concentrating, and feelings of loneliness, fear, worthlessness, guilt, and hopelessness (Id.).  She spent her days watching television and cleaning the trailer where she lived with her controlling boyfriend (Tr. 184-85).  She took Effexor, which was prescribed by her family physician (Tr. 185).  Plaintiff used marijuana and alcohol daily and stated that she had gone through a substance abuse treatment program, which had not helped (Tr. 184-85).  She reported a history of childhood sexual abuse by her stepfather and a series of abusive relationships with men (Tr. 186).  Mr. Bliss noted that Plaintiff did not have any language, communication, speech, or sensorium problems (Tr. 184).  Plaintiff was appropriately dressed and cooperative (Tr. 186).  Her speech was normal, her mood was depressed, and she denied any current suicidal or homicidal intent (Id).  Remote memory was intact, but immediate and recent memory were impaired, as were attention span and ability to concentrate (Id.).  Plaintiff displayed sufficient insight, had intact ability to abstract, and appeared to function in the below normal range of intelligence (Id.).  Mr. Bliss diagnosed dysthymic disorder, cannabis abuse, borderline intellectual functioning, and dependent personality disorder, and assigned a Global Assessment of Functioning ("GAF") score of 55 (Id.).   He recommended outpatient psychotherapy to assist with adaptive skills (Tr. 187).

A Nova treatment note, dated August 21, 2002, indicates that Effexor and Seroquel were prescribed (Tr. 177).  On September 6, 2002, a Nova counselor noted that Plaintiff was

compliant with her medication, but there was an escalation in psychosocial stressors (Tr. 178). Plaintiff's Effexor and Seroquel dosages were increased in November 2002 (Tr. 176).

    William E. Mohler, M.A., performed a psychological evaluation on November 12, 2002 (Tr. 170). Plaintiff told Mr. Mohler that she was separated from her husband and living with a boyfriend (Id.). She had graduated from high school in a special education program (Id.). She denied any involvement with drugs or alcohol (Id.). She had been laid off from her job (Id.). Mr. Mohler observed that Plaintiff's hands, nails, and clothing were dirty and, although she was alert and cooperative, she was clearly depressed with somewhat flattened affect (Tr. 171). Plaintiff stated that her current medications were generally helpful, but she still became depressed and had transient anxiety (Id.). She reported that she spent most of her time watching television and had few friends, although a friend had brought her to the appointment (Id.). Plaintiff's speech was normal, coherent, and relevant (Id.). Eye contact was poor (Id.). Plaintiff complained of a reduced energy level, but there was no indication of appetite or sleep disturbances, crying spells, feelings of hopelessness or helplessness, suicidal or homicidal ideations, hallucinations, delusions, obsessions, or compulsions (Id.). She displayed some anxiety in terms of hand tremors and repeated sighing (Id.). Mr. Mohler noted that Plaintiff's memory appeared to be in the low normal range, her concentration and persistence were adequate, and her ability to abstract and generalize was mildly impaired (Id.). Plaintiff's ability to perform calculations in her head was more seriously impaired, as she was able to perform only simple single digit addition and subtraction (Id.). Insight and judgment were impaired (Id.). Testing yielded a verbal IQ of 71, a performance IQ of 77, and a full scale IQ of 72, in the borderline range (Id.). Reading comprehension was at the eighth grade level (Tr. 172). Memory

test results were in the low normal to normal range (Id.). He opined that she was able to follow one-step and two-step instructions, but her ability to relate to others and handle routine stress was impaired and she would be unable to handle her own funds because of poor math skills (Tr. 173). Mr. Mohler assigned a GAF score of 55 (Id.).

State agency psychologist Kristen Haskins, Psy. D., reviewed the evidence in Plaintiff's file on November 19, 2002, and opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration (Tr. 201). Dr. Haskins opined that Plaintiff had moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, and to respond appropriately to changes in the workplace (Tr. 189). Dr. Haskins concluded that Plaintiff retained the mental capacity to understand, remember, and carry out simple instructions, relate to co-workers and supervisors, and adapt to normal stress and pressures in the workplace (Tr. 190).

On January 8, 2003, the Nova counselor reported that Plaintiff was anxious and having ongoing financial and interpersonal concerns (Tr. 178). A psychiatrist at Nova saw Plaintiff on January 17, 2003, at which time Plaintiff reported she was sleeping better and was not as anxious, but her medication did not seem to help during the day (Tr. 215). She denied any suicidal or homicidal thoughts (Id.). Plaintiff's hygiene was adequate, her speech was spontaneous, and her thoughts were coherent and relevant (Id.). She displayed intact memory but limited judgment and some impulsivity (Id.). She appeared to have average intellectual

functioning (Id.).  The psychiatrist diagnosed chronic dysthymic disorder, social phobia, cannabis abuse, and personality disorder with some dependent and histrionic and borderline traits (Id.).  On May 30, 2003, a second state agency psychologist, Robert L. Gaffey, Ph.D., reviewed the evidence and concurred with Dr. Haskins' opinion (Tr. 190).

Plaintiff's Seroquel dosage was increased in January and February 2003 (Tr. 176).  A progress review note, dated March 17, 2003, indicates partial progress toward treatment goals (Tr. 181).

Plaintiff continued to take Seroquel and Effexor throughout 2003 (Tr. 211, 213-14).  Psychologist John S. Quinn, Ph.D., examined Plaintiff on November 6, 2003 (Tr. 204).  At Plaintiff's request, a friend attended the assessment (Id.).  Plaintiff reported that Effexor and Seroquel were helpful most of the time with no side effects (Id.).  She complained that she could not focus and was irritable, sensitive to disrespectful people, and felt "wound up" (Id.).  Plaintiff did not admit to any substance abuse (Tr. 205).  Her activities included doing housework, watching television, walking, using a computer, and napping (Tr. 205).  She saw friends or family about once a week (Id.).  Dr. Quinn observed that Plaintiff's hygiene was normal, she seemed motivated and cooperative, and she did not display any eccentric mannerisms, impulsivity, compulsivity, or tendency to exaggerate or minimize symptoms (Tr. 206).  Plaintiff's speech was normal, with no language difficulty (Id.).  Dr. Quinn noted that Plaintiff did not cry and showed no signs of unusual motor activity, detachment feelings, delusions, or hallucinations (Tr. 206-07).  Although Plaintiff complained of a low energy level, Dr. Quinn commented that her energy level appeared normal (Tr. 206-07).  He estimated that she was functioning in the borderline range of intelligence (Tr. 208).  Insight and judgment were intact

(Id.). Plaintiff had normal immediate and short-term memory and attention and concentration (Tr. 207). She also displayed intact long-term memory (Id.). Dr. Quinn diagnosed early onset dysthymic disorder and borderline intellectual functioning (Tr. 208). He opined that Plaintiff had: moderately to markedly limited ability to withstand work stress and pressures; moderately limited ability to relate to others and to maintain concentration, persistence and pace for simple, repetitive tasks; and minimally limited ability to understand, remember and follow instructions (Tr. 208-09).

State agency psychologist Roy Shapiro, Ph.D., reviewed the evidence as of December 5, 2003 (Tr. 217). He opined that Plaintiff had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration (Tr. 227). He further opined that Plaintiff could perform tasks having several steps under normal supervision and could deal with the public and handle routine changes (Tr. 232). State agency psychologist Phyllis Rosen, Ph.D. concurred with Dr. Shapiro's opinion on February 18, 2004 (Tr. 232, 257).

Plaintiff was seen at the Crises Recovery Center on August 26, 2005 (Tr. 236). She reported conflict with her boyfriend, but was chatty and pleasant (Tr. 236). She was diagnosed with dysthymic disorder, rule out bipolar II disorder, and cannabis abuse, in early full remission (Id.). Her Effexor and Seroquel were refilled (Tr. 236-37).

### C. **Hearing Testimony**

Plaintiff testified that she graduated from high school and had been in special education classes throughout her schooling (Tr. 268). She stopped working in May 2002 (Tr. 268-69). Her last job, which lasted about three years, was as an assembler of exercise equipment (Tr. 269-70).

Plaintiff stated that she had difficulty with speed, i.e., meeting a quota, on this job (Tr. 271).  She quit because of the stress of having "my supervisor always on my back and then having to focus and concentrate at the same time on what I'm doing" (Id.).  She stated that it was hard for her to keep any job, but she had gone about the assembly job in the right way because she had not wanted to be fired (Tr. 282).  Plaintiff had also worked for about one year as a cashier at Dairy Mart, but she was fired when she accidently sold alcohol to a minor (Tr. 271-72).  She also worked as a food preparation worker at two Burger King restaurants (Tr. 272).  She was fired from one of those jobs because she misunderstood when she was supposed to report for work (Tr. 273).  She quit the other Burger King job because the commute wore her out (Id.).  She had trouble making sandwiches fast enough at the Burger King restaurants (Id.).

Plaintiff testified that she becomes depressed and quiet "out of the blue" and then stops what she is doing and sits and does nothing for "pretty much most of the day," trying to sort out the thoughts in her head (Tr. 275-76).  She told the ALJ that she was taking Effexor and Seroquel and had been receiving counseling at Nova until the center closed in July 2005 (Tr. 276-77).  She changed to another treatment center and was scheduled to see a counselor there in February (Tr. 277).  Her counseling sessions and her medications were helpful (Id.).  She stated that it was hard to work through her problems when she was around people (Tr. 282).  She denied using alcohol and admitted to using marijuana, but said she was quitting (Tr. 283).

Plaintiff testified that she was a slow learner and needed to be told more than a couple of times how to do a certain job because, "depending on what state of mind I'm in, I don't seem to catch on to what is being said until ... five minutes after..." (Tr. 289).  Plaintiff testified, however, that she had no trouble reading and could understand what she read in the newspaper

8

(Tr. 275).  She could write and could add and subtract on paper, but she could not do multiplication or division (Id.).  She lived with a boyfriend, visited family every two or three months, and saw a friend in her trailer park every week or two (Tr. 278).  Her boyfriend's mother drove her to church every now and then (Tr. 280).

Vocational expert ("VE") Evelyn Sindelar identified Plaintiff's assembly job as unskilled work at the light exertional level as described in the Dictionary of Occupational Titles ("DOT") (Tr. 284).  Plaintiff's fast food worker jobs at Burger King and her stock/sales clerk job at Dairy Mart were also unskilled, light jobs, as described in the DOT (Tr. 284-85).  The ALJ asked the VE to assume an individual capable of light exertional level work with the following mental limitations: no complex tasks; no detailed written instructions, plans and/or blueprints; only simple and fairly repetitive, easily learned tasks; and low stress, i.e. no production quotas and no high production pace (Tr. 285-86).  The VE responded that such a person could perform Plaintiff's past assembly work job (Tr. 286).  The VE was then asked whether the same hypothetical worker would be capable of working if she was further limited by moderate limitations, meaning affecting one-third of the workday, in relating to fellow workers, supervisors, and others; moderate limitations in concentration, persistence or pace to perform simple repetitive tasks; and moderate limitations in the ability to withstand the stress and pressures associated with daily work activities (Tr. 287-88).  The VE responded that such an individual would not be able to work at any job (Tr. 288.).  The VE testified that the same would be true if this worker were further limited by moderate to marked limitations in her ability to withstand the stress and pressure associated with daily work activity (Id.).

### III. DISABILITY STANDARD

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§404.1505, 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health and Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

### A.  The ALJ's Decision Whether to Reopen a Prior Claim

Plaintiff first claims that the ALJ erroneously invoked res judicata in stating that he found no reason to reopen Plaintiff's prior Title II application. Under 20 C.F.R. § 404.988, a prior claim may be reopened within one year of the date of notice of the initial determination for any reason. Plaintiff filed her current claim on September 4, 2003, which was within one year of the initial determination of Plaintiff's prior claim, which was made on November 18, 2002. However, the decision to reopen a prior claim is within the ALJ's discretion and the District Court does not have jurisdiction to review the ALJ's refusal to reopen the claim absent a colorable constitutional claim. *See Bogle v. Sullivan*, 998 F.2d 342, 346 (6th Cir. 1993). Plaintiff has not presented any colorable constitutional claims to the Court. Plaintiff asserts that injustice would arise given the fact that Plaintiff's psychological impairments could explain her failure to appeal the determination. However, the record documents only mild to moderate impairments and these impairments did not interfere with Plaintiff's ability to appeal the ALJ's administrative determination on her later application. Accordingly, the Magistrate Judge concludes the ALJ did not err in invoking the doctrine of res judicata to decline reopening Plaintiff's prior claim.

Plaintiff next claims the ALJ's consideration of evidence in the record prior to the date of denial of the first application warrants a finding that the ALJ's actions amounted to a *de facto* reopening of Plaintiff's prior claim. The ALJ explicitly stated that he found no reason to reopen Plaintiff's prior claim, and thus, the earliest onset date under consideration in his decision is June 4, 2003. Case and statutory law provide that an ALJ must be given some leeway to evaluate the proffered evidence to determine whether to reopen the prior claim. *Hall v. Bowen*, 840 F.2d 777, 778 (11th Cir. 1987). And, it is appropriate for the ALJ to develop and consider a claimant's medical history for at least one year preceding the month in which the claimant files her application, unless there is reason to believe an earlier period is necessary. *See* 20 C.F.R. §§ 404.1512(d), 416.912(d).

There is not much evidence in the record generated after the June 4, 2003 onset date. The ALJ cited Nova Medical records dated from January 17, 2003 through January 23, 2004, a consultative examination record dated November 6, 2003, and an RFC dated February 18, 2004. The only other records dated post-June 2003 include treatment notes from August 26, 2005 and other medical records from 2005 that are not clearly legible. The ALJ also cited evidence generated prior to June 4, 2003, specifically, medical records dated June 5, 2002 from Dr. Blumer, and a consultative examination dated November 12, 2002. In addressing the question of disability, the ALJ noted that by January 2004, Plaintiff's diagnosis had not changed and her condition had not deteriorated (Tr. 18). In addressing Plaintiff's RFC, the ALJ noted that both of the RFC assessments cited were consistent with the overall record and Plaintiff's testimony (Tr. 19). Considering the limited number of records generated after the June 2003 onset date and the ALJ's comments in his written decision, it appears the ALJ used the pre-June 2003 records to

obtain a full picture of Plaintiff's impairments, for comparison purposes, and to substantiate more recent evidence. The ALJ's determination does not appear to be based in whole, or in significant part, on the pre-June 2003 records. Accordingly, the Magistrate Judge finds that the ALJ's review of the pre-June 2003 was appropriate and does not amount to a *de facto* reopening of Plaintiff's prior claim.

### B. The ALJ's Consideration of Plaintiff's Substance Abuse

Plaintiff next claims the ALJ improperly relied on Plaintiff's substance abuse in making his disability determination. Specifically, Plaintiff asserts the ALJ failed to comply with the regulations set forth in 20 C.F.R. §§ 404.1535 and 416.935 and failed to analyze the significance of Plaintiff's marijuana use in making his disability determination. Plaintiff maintains that the ALJ made repeated references to the issue of Plaintiff's use and suggested she take a more proactive stance against using, which shows that the ALJ was improperly influenced by the issue of substance abuse in his decision.

The regulations cited by Plaintiff explicitly refer to situations in which a claimant is found to be disabled and there is medical evidence of substance abuse. *See* 20 C.F.R. §§ 404.1535 and 416.935. Under these provisions, the ALJ is only required to consider the impact of a claimant's substance use if he finds that the claimant is disabled. The ALJ determined that Plaintiff was not disabled, and thus, he was not required to analyze whether Plaintiff's use was a material factor to her disability, as mandated by 20 C.F.R. §§ 404.1535 and 416.935.

The ALJ did analyze the impact of Plaintiff's use on her credibility and alleged limitations. The ALJ noted that in January 2004, Plaintiff was encouraged to find "non-chemical coping strategies to deal with her mood disorder" (Tr. 18, 210-16). When analyzing Plaintiff's

RFC, the ALJ noted that Plaintiff testified she abuses marijuana regularly, but is not in a treatment program (Tr. 19). He also noted that it would serve Plaintiff greatly to take a more proactive stance against her chemical dependence (Tr. 20).

There are multiple references to Plaintiff's use of marijuana and alcohol in the record. In July 2002, Plaintiff reported that she used marijuana and alcohol on a daily basis and she was diagnosed with cannabis abuse (Tr. 184-86). In January 2003, she was diagnosed with cannabis abuse, continuous (Tr. 215). Plaintiff reported that she occasionally drinks and has had problems with drinking in the past (Id.). In December 2003, a reviewing psychologist noted in his RFC report that Plaintiff "has a long history of substance dependence which she denied to the psychologist which decreases credibility" (Tr. 232). Plaintiff testified at the hearing that she does not use alcohol and that she was quitting her use of marijuana (Tr. 283).

The ALJ need not fully credit a subjective complaint where there is no underlying medical basis. *Fraley v. Secretary of Health and Human Servs.*, 733 F.2d 437, 440 (6th Cir. 1984). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Bynum*, 2001 WL 1906274, at *6 (internal citations and quotations omitted). When there are discrepancies between what a claimant has said and what the written record shows, a reviewing court should not substitute its credibility findings for those of the ALJ. *See Wagner v. Apfel*, 238 F.3d 426, 2000 WL 1872049, *4 (6th Cir. Dec. 15, 2000)(Table); *Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).

Based upon the above, the Magistrate Judge finds that the ALJ's consideration of the impact of Plaintiff's marijuana use on her credibility and alleged impairments was not inappropriate under the facts of this case.

### C. The ALJ's Treatment of Plaintiff's Examining Sources

Plaintiff claims the ALJ failed to adequately explain the weight he assigned to any examining source's opinion in the record, selecting instead one or two specific findings of each for inclusion in his RFC. Plaintiff specifically takes issue with the ALJ's handling of the opinions of Drs. Haskins, Shapiro, and Quinn, and Mr. Mohler.

The opinions of treating physicians are afforded greater weight than those of physicians who have examined the claimant on consultation or who have not examined the claimant at all. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). Nonetheless, a statement by a physician whether a claimant is disabled or unable to work is not controlling. *See* 20 C.F.R. §§404.1527(e)(1) and 416.927(e)(1). Indeed, an ALJ is not bound by the opinion of a claimant's treating physician; however, if he or she chooses to reject the opinion, he or she must articulate a reason for doing so. *See Wilson,* 378 F.3d at 545; *Shelman*, 821 F.2d at 321.

The ALJ is not required to credit a treating physician's opinion that is inconsistent with the objective medical evidence or to give substantial weight to a treating physician if his opinion is a mere conclusory statement, unsupported by clinical and/or diagnostic findings. *See Bogle c. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 538 (6th Cir. 1981). Indeed, where no objective medical evidence is presented and there is no explanation of a nexus between the conclusion of disability and physical findings, the

ALJ may choose to completely disregard the treating physician's opinion. *See Cutlip v. Secretary of Health and Human Servs.,* 25 F.3d 284, 287 (6th Cir. 1994); *Higgs v. Bowen*, 880 F.2d 860, 863-64 (6th Cir. 1988).

### 1. Drs. Haskins and Shapiro

The ALJ's decision reflects that he accepted Dr. Haskins' January 2002 opinion (Tr. 189-90) as consistent with the record evidence. Dr. Haskins assessed moderate limitations, which do not appear to have been rejected by the ALJ. Moreover, these limitations were provided in Section I of the RFC assessment report completed by Dr. Haskins. Section I is merely intended as a worksheet aid in deciding the extent of an individual's limitations and the adequacy of documentation and does not constitute the RFC assessment. *See* S.S.A. Program Operations Manual System at DI 24510.060B2, available at http://www.ssa.gov. The actual RFC assessment is recorded in Section III. *Id.* at DI 24510.060B4. The ALJ accepted Dr. Haskin's Section III conclusions finding that Plaintiff has the ability to understand, remember and carry out simple instructions, relate adequately to coworkers and supervisors, and adapt to normal stress and pressure in the workplace (Tr. 19, 189-90). Similarly, the ALJ accepted, as consistent with the overall record, Dr. Shapiro's opinion that Plaintiff could sustain several step tasks, deal with the public, and handle routine changes in the work setting (Tr. 19). These findings were provided in Section III of the RFC report completed by Dr. Shapiro (Tr. 232). Although Plaintiff claims the ALJ erred by not mentioning any of the moderate limitations assessed by Dr. Shapiro, these limitations were provided in Section I, which does not constitute Dr. Shapiro's actual RFC assessment.

An ALJ is not required to make mention of every piece of evidence in the record in reaching his decision. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 494, 507-08 (6th Cir. Feb. 9, 2006). Indeed, an ALJ must show only that he considered the record as a whole. *See Hurst v. Secretary of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1999). The ALJ articulated a proper basis for accepting the RFC assessments of Drs. Haskins and Shapiro and his decision reflects that he considered the entire record as a whole. The ALJ was not required to address the findings Drs. Haskins and Shapiro provided in Section I of their RFC reports. Accordingly, the Magistrate Judge concludes the ALJ did not err in his treatment of the opinions of Drs. Haskins and Shapiro.

### 2. Dr. Quinn

With respect to Dr. Quinn, the ALJ noted that the doctor found mild limitations in understanding, remembering, and following instructions, moderate limitations in maintaining concentration, persistence and pace, and performing simple repetitive tasks, and moderate to marked limitations in the ability to withstand the stress and pressure of daily work activity (Tr. 19). The ALJ discounted this opinion as based on Plaintiff's subjective complaints and reported work history and also found that it was inconsistent with Plaintiff's reported activities (Tr. 204-9). Dr. Quinn recorded that Plaintiff's attitude and mood were appropriate and she displayed no symptoms of manic episode, anxiety, preoccupations, delusions, or obsessions (Id.) Plaintiff's memory was within normal limits and judgment was intact (Id.). Dr. Quinn's assessment of Plaintiff's limitations regarding the ability to withstand work pressures was based upon her reported work history and her interview. Although Dr. Quinn concluded Plaintiff was moderately to markedly limited in this area, his findings from the interview were mostly normal

and/or borderline (Id.). Thus, it was reasonable for the ALJ to conclude Dr. Quinn's opinion with respect to Plaintiff's ability to withstand work pressures was based upon Plaintiff's subjective complaints and reported work history.

### 3. Mr. Mohler

The ALJ noted that Mr. Mohler found Plaintiff could only follow one or two step instructions and was impaired in her ability to relate to others and handle routine stress (Tr. 19). The ALJ concluded the record did not support such severe restrictions in these areas (Id.). However, the ALJ determined Plaintiff was limited to simple repetitive tasks and a low-stress environment, which nonetheless accommodates Mr. Mohler's opinion with respect to these areas. The ALJ did not include a limitation in his RFC which would accommodate Mr. Mohler's opinion that Plaintiff was impaired in her ability to relate to others. However, Mr. Mohler saw Plaintiff only on one occasion for a consultative examination. A medical conclusion reached by a physician who only examined a claimant on a single occasion is not entitled to considerable weight:

> Generally, the longer a treating source has treated you, the more time you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 416.927(d)(2)(i). Moreover, even if a physician is given the classification of treating physician, the extent of the weight given to that physician depends on the degree to which it is supported by specific and complete clinical findings. *See Bogle*, 998 F.2d 347, 48 (6th Cir. 1993); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 538 (6th Cir. 1993); *Giddings v.*

*Richardson*, 480 F.2d 652, 656 (6th Cir. 1973).  The ALJ stated that because the record is devoid of notes indicating the effect of Plaintiff's symptoms on her daily life, it was difficult to evaluate Plaintiff's claims regarding her symptoms (Tr. 20).  The limitations Mr. Mohler assessed seem to be based primarily on Plaintiff's reported symptoms and behavior during the evaluation, and the record indicates Plaintiff is not fully credible.  Moreover, the ALJ noted that Plaintiff reported going to church, visiting friends, living with her boyfriend, and getting along well with friends and neighbors (Tr. 19).  These reported activities are not consistent with Mr. Mohler's opinion that Plaintiff is impaired in her ability to relate to others.  Accordingly, the Magistrate Judge concludes the ALJ did not err by declining to accept Dr. Mohler's conclusion that Plaintiff is limited in her ability to relate to others.  Thus, the Magistrate Judge concludes the ALJ did not err in his treatment of Mr. Mohler's opinion.

Plaintiff also claims the VE testified that if the moderate limitations assessed by the opinion sources were accepted, Plaintiff could not perform any jobs.  The ALJ asked the VE to assume an individual with Plaintiff's age, educational and vocational background, who could perform light work, but with the following limitations: no complex tasks, no detailed written instructions, plans and/or blueprints, only simple and repetitive easily learned tasks, and low stress (Tr. 285-86).  The VE responded that such an individual would be able to perform Plaintiff's past assembly job (Tr. 286).  On cross-examination, Plaintiff's counsel asked the VE to assume a hypothetical individual with moderate limitations in relating to workers and others, maintaining concentration, persistence and pace, and withstanding the stress of a normal workweek (Tr. 287-88).  Counsel originally described "moderate limitations" as meaning occasional and then stated that "moderate limitations" meant having difficulties or impairment

19

for approximately one third of the workday.  The VE testified that such an individual would not be able to perform any jobs (Tr. 288).  Because the Magistrate Judge finds no clear err in the ALJ's treatment of the opinions provided by Plaintiff's medical sources, the Magistrate Judge concludes the ALJ did not err by relying on the VE's response to his original hypothetical, rather than the hypothetical posed by Plaintiff's attorney on cross-examination.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.  Accordingly, the Court recommends the decision of the Commissioner be AFFIRMED.

> s/ Kenneth S. McHargh
> Kenneth S. McHargh
> United States Magistrate Judge

Date: March 27, 2007

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).